UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMERON HOSPITAL ASSOCIATION, a California Non-Profit Association,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GEICO GENERAL INSURANCE COMPANY, a Nebraska Corporation,<br><br>　　　　　Defendant. | Case No. 2:24-cv-01379-JAM-AC<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS** |
| DAMERON HOSPITAL ASSOCIATION, a California Non-Profit Association,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GEICO INDEMNITY COMPANY, a Maryland Corporation,<br><br>　　　　　Defendant. | Case No. 2:24-cv-00934-JAM-AC |

INTRODUCTION OF CASE

　　Before the Court is two related cases involving Geico General Insurance Company and Geico Indemnity Company ("Defendant(s)"), who

1

move to dismiss the Complaint by Dameron Hospital Association ("Plaintiff") for failure to state a claim. See Mot., ECF No. 12 and 10; Compl., ECF No. 1 (both).  These cases involve nearly identical claims and legal arguments and were related pursuant to Local Rule 123.  See ECF No. 9 (both).  Plaintiff opposed the motions.  See Opp'n, ECF Nos. 14 and 12.  Defendants filed replies. See Reply, ECF Nos. 15 and 14.  For the reasons below, Defendants' Motions are denied in part and granted in part with leave to amend.[1]

I.   FACTUAL ALLEGATIONS

Plaintiff Dameron Hospital operates an emergency room in Stockton, California and seeks injunctive, declaratory, and compensatory relief arising from Defendants' Geico General Insurance Company ("Geico General") and Geico Indemnity Company ("Geico Indemnity") failure to pay Dameron Hospital certain benefits due under various patients' automobile policies.  See Compl. at 24-25 (both).  Specifically, this case involves the purported assignment of Med-Pay ("MP") and Uninsured Motorist ("UM") benefits by five patients who were admitted and discharged from Dameron Hospital.  Dameron claims entitlement to these benefits pursuant to the Assignment of Benefits ("AOB") contained in each patients' respective Conditions of Admission ("COA") paperwork.  Four of the patients have Medicare or Veterans Administration healthcare as their medical insurance (D.S., X.K., M.A., A.G.) and one individual (J.M.) is alleged to be a self-pay patient with no other insurance.  See Compl. ¶ 4 (both).  Each of

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for August 20, 2024.

2

these individuals is alleged to maintain automobile coverage through either Defendant Geico General Insurance Company or Geico Indemnity Company.  See Compl. ¶ 6-7 (both).

Dameron Hospital alleges three causes of action in its Complaint.  The First Cause of Action is a claim for injunctive relief under California's Unfair Competition Law, Business and Professions Code § 17200 ("UCL") stemming from a breach of contract.  The Second Cause of Action alleges breach of contract by Defendants for failure to honor the assignment of MP or UM benefits in Dameron Hospital's COAs signed by the aforementioned emergency room patients.  The Third and final Cause of Action is a claim under the Medicare Secondary Payer Act, U.S.C.A. § 1395y(b)(3)(A) ("MSP Act"), alleging that Defendants have primary payer responsibility for the services rendered by Plaintiff Dameron Hospital.

## II.   OPINION

### A.   Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Under the plausibility pleading standard set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), a plaintiff survives a motion to dismiss by alleging "enough facts to state a claim to relief that is plausible on its face."  The complaint must contain sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  At the Rule 12(b)(6) stage, the Court must accept all nonconclusory

factual allegations of the complaint as true and construe those facts and the reasonable inferences that follow in the light most favorable to the Plaintiff.  Id.; see also Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).

    B.   Analysis

        1.  Plaintiff Fails to State a Claim for Breach of Contract

           a. The COAs Are Unenforceable Adhesion Contracts Under California Caselaw for Patients with Medical Insurance

Defendants argue that the COAs and AOBs that Plaintiff requires patients to sign upon admittance or discharge from Dameron Hospital are adhesion contracts, thus there is no breach of contract claim for such unenforceable contracts that defy the reasonable expectations of the signatory.  See Mot. at 9. Plaintiff argues that an unpublished district court order in this district, Dameron Hosp. Ass'n v. State Farm Mut. Auto. Ins. Co., 2018 WL 1425981, at *4 (E.D. Cal. Mar. 22, 2018) (hereinafter, "State Farm 2018") supports its position that the AOBs are valid contracts.  See Opp'n at 10; Exhibit 1.  However, as Defendants correctly point out in their Reply, State Farm 2018 did not address arguments that AOBs are unenforceable as adhesion contracts that defy reasonable expectations.  See Reply at 6. Importantly, unlike this Court, the State Farm 2018 district court order did not have the benefit of the analysis in Dameron Hosp. Assn. v. AAA N. California, Nevada & Utah Ins. Exch., 77 Cal. App. 5th 971 (2022)("AAA") – a recently decided case – which as discussed below, deemed Dameron Hospital's COAs unenforceable

4

adhesion contracts under California law.

The factual allegations and legal arguments in this case are strikingly similar to those at issue in AAA: both involve Dameron Hospital, automobile insurers, and questions surrounding the assignment of MP and UM benefits.  Plaintiff argues that AAA disposes the contract issue in its favor, however, the Court finds that AAA squarely holds that Dameron Hospital's COAs are adhesion contracts and are unenforceable if patients do not reasonably expect such assignment of benefits to occur.  Id. at 988, 994.

"The distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms." AAA at 992, quoting Wheeler v. St. Joseph Hosp., 63 Cal. App. 3d 345, 356 (1976).  There is arguably no weaker party than an individual recently admitted to an emergency room for injuries sustained in an accident or any individual under the care of medical professionals and awaiting discharge from a hospital.  As Defendants persuasively point out, Dameron Hospital's COAs possess all the characteristics of a contract of adhesion because "[t]he would-be patient is in no position to reject the proffered agreement, to bargain with the hospital, or in lieu of agreement to find another hospital." AAA, at 992-93, quoting Wheeler, 63 Cal. App. 3d at 357.

The COAs Dameron Hospital requires are dense standardized contract forms, which must be signed by or on behalf of all patients receiving emergency medical services, before any patient may be discharged.  See Compl. Exhibit 1; ¶ 8.  Patients in need of emergency care like those in this case are in no position to bargain with Dameron Hospital over the terms of the COA or refuse

1  to sign it and find another emergency room.
2      As California caselaw maintains, the enforceability of an
3  adhesion contract "depends upon whether the terms of which the
4  adherent was unaware are beyond the reasonable expectations of an
5  ordinary person or are oppressive or unconscionable." AAA at 993,
6  quoting Wheeler at 357.  Here, the Court finds that the COAs that
7  Dameron Hospital required patients to sign are unenforceable when
8  applied to those who would not reasonably expect to sign away
9  their benefits, namely those with medical insurance.
10      As AAA explained, "[p]atients with medical insurance coverage
11 expect that coverage will 'insulate [them] from any monetary
12 obligation for such medical care.'" AAA, 77 Cal. App. 5th at 988
13 (quoting Whiteside v. Tenet Healthcare Corp., 101 Cal. App. 4th
14 693, 705 (2002)).  Just like in AAA, Plaintiff's attempt to claim
15 patients' UM and MP benefits once again to recoup more than what
16 health insurance companies would otherwise pay for their patients
17 is simply another attempt to reduce a capped amount of funds that
18 are intended to compensate the patient for the patients' losses
19 and expenses.  Id.
20      Both policy holders insured by Geico General – D.S. and X.K.
21 – have medical insurance.  D.S. is alleged to have Veterans
22 healthcare benefits and X.K. has Medicare.  Compl. ¶ 4.
23 Similarly, two of three Geico Indemnity policy holders – M.A. and
24 A.G. – are also Medicare recipients.  Id.  Thus, under a
25 straightforward application of AAA, these patients constitute the
26 precise type of patient whose reasonable expectations would not
27 align with Dameron Hospital's AOBs.  The lesson of AAA is that any
28 policy holder with medical insurance would not reasonably expect

1 to assign their MP and/or UM Benefits because persons with these
2 benefits "expect benefits to be paid directly to them to
3 compensate them for their bodily injuries." Id. at 993-94.
4       Plaintiff suggests that government-funded insurance may be
5 different than other insurance. But Plaintiff's Complaint does
6 not contain sufficient factual allegations to support its claim
7 that Medicare or Veterans healthcare insurance is a "payer of last
8 resort" under the facts of this case.
9       The only scenario AAA recognized where an AOB was not
10 immediately invalid as beyond the reasonable expectations of an
11 ordinary person concerned the patient, R.D., who had MP benefits
12 that were capped at $5,000. AAA, 77 Cal. App. 5th at 992, 995;
13 see also Opp'n at 7. Because R.D. had a cap on his benefits, the
14 court found that a trier of fact could conclude it was within
15 reasonable expectations that Dameron would collect amounts beyond
16 the $5,000 policy from other benefits. Here, J.M., who is alleged
17 to be a self-payer with no other insurance, parallels R.D. because
18 without medical insurance, he is not similarly situated to those
19 with Medicare or Veterans healthcare who would reasonably expect
20 their MP or UM benefits to compensate them for their injuries.
21 See Compl. ¶ 31. Thus, the Court agrees with Plaintiff's
22 contention that AAA acknowledged there might be an assignment
23 expectation for first-party MP where the patient was self-paying
24 (i.e., had no other form of health insurance or health care
25 payment coverage) and finds that Dameron Hospital has plausibly
26 stated a claim for breach of contract only with regard to the
27 self-pay patient J.M. 77 Cal. App. 5th at 992-995.
28 ///

     b. <u>Partial Assignment May Be Valid Assignments As to J.M.</u>

 Given the Court's determination that Dameron Hospital's COAs and the AOBs within them are unenforceable adhesion contracts for those with medical insurance, the Court need not reach the partial assignment issue except with regard to J.M., the self-payer.  In the case of J.M., it is plausible that it was within that individual's reasonable expectations for Dameron Hospital to collect direct payments from Geico Indemnity out of J.M.'s MP or UM benefits since J.M. is alleged to have had no other insurance and these automobile benefits do cover medical expenses in addition to compensating bodily injuries.  Therefore, it follows that if J.M. could have reasonably expected to sign over "all medical payments under any policy of insurance, and all uninsured and underinsured motorist insurance benefits payable to or on behalf of the patient," to Dameron Hospital, it is possible that the assignments, even if partial, are valid.  Compl., ¶ 10.

 Defendants' partial assignment argument, discussed in Mot. at 11, boils down to a debate over reasonable expectations, which at this stage of litigation, is subject to a low standard of plausibility.  Defendants cite <u>Stein v. Cobb</u>, 38 Cal. App. 2d 8 (1940), <u>Reichert v. Gen. Ins. Co. of Am.</u>, 68 Cal. 2d 822, 834 (1968), and <u>Portillo v. Farmers Ins. Exch.</u>, 238 Cal. App. 2d 58 (1965) for the proposition that their consent is needed.  <u>See</u> Mot. at 11, 13.  However, these cases are inapposite because they were decided in distinguishable contexts.  <u>Stein</u> does not deal with the automobile insurance context, rather, it discusses publishing rights.  <u>Reichert</u> deals with property damage and fire insurance.

Portillo deals with the wrongful death context where an individual did not survive their injuries, implicating a very different body of common law not in operation here. Even if the Court credited Defendants' arguments that personal injury causes of action cannot be transferred, this would at most mean that J.M.'s UM benefits, which are paid directly for personal injuries and not at issue in this case, are not transferrable. Here, Dameron Hospital is not claiming J.M.'s UM benefits, and only alleges that Geico paid MP, which exists to cover medical expenses, in violation of the AOB. See Compl. ¶ 31.

Based on these cases, the Court is not persuaded as a matter of law that Geico's consent was necessary to assign MP benefits or that partial assignments "increase[] Geico's burden beyond what it contracted for" because presumably, if a patient can reasonably expect to assign automobile benefits to cover medical expenses, they would not expect to receive these benefits directly from their automobile insurer, meaning that Geico would only need to pay MP benefits to Dameron Hospital.[2]

Construing the facts most favorable to the Plaintiff that J.M. received MP benefits from Geico Indemnity as alleged in Compl. ¶ 31, the Court finds that Plaintiff has plausibly pleaded that J.M. could have assigned their automobile benefits to Dameron Hospital.

### 2. Plaintiff Fails to State a Claim Under the UCL

The UCL protects California's consumers by prohibiting any

---

[2] In any case, the Court cannot consider the additional arguments regarding Stein, Reichert, or Portillo discussed in the latter half of Defendant's Reply because it exceeds the page limit set by the filing order in this case. See Order, ECF No. 11-2; 5.

"unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  The remedies available under the UCL are injunction and restitution.  Id.  As discussed below, because Plaintiff has failed to state a viable breach of contract claim for four of the five patients due to the unenforceable nature of the adhesion contracts, it follows that the UCL claims flowing from those allegations similarly fail.  The UCL claim as to the fifth patient, J.M., also fails because breach of contract claims are not actionable under the UCL and Plaintiff has failed to allege any unlawful, unfair, fraudulent, or injurious conduct to consumers.

        a. Unlawful Prong

Under the "unlawful prong" of § 17200, a specific activity is not proscribed, rather, the UCL "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." Id. at 1048.  Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (citing Farmers Ins. Exch. v. Superior Court, 2 Cal. 4th 377, 383 (1992)).  However, "a common law violation such as breach of contract is insufficient" to support a claim under the unlawful prong of California's UCL.  See Shroyer v. New Cingular Wireless Servs., 622 F.3d 1035, 1044 (9th Cir. 2010); Vascular Imaging Professionals, Inc. v. Digirad Corporation, 401 F. Supp.3d 1005, 1014 (S.D. Cal. 2019) (quoting Shroyer); see also Mazal Group, LLC v. Espana, 2:17-cv-05856-RSWL-KS, 2017 WL 6001721, at *4 (C.D. Cal. Dec. 4, 2017) (granting motion to dismiss UCL claim when plaintiff did not go beyond alleging a violation of common law).  Plaintiff in the instant case does not go beyond alleging common

law contract violations and has, therefore, failed to state a claim under the first prong of the UCL.

### b. Unfair Prong

Plaintiff argues that a business practice is unfair "when the practice 'offends an established policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumer.'[citations]". State Farm Fire & Casualty Company v. Sup. Ct., 45 Cal.App.4th 1093, 1104 (1996). Yet, Dameron Hospital fails to allege anything beyond the purported violation of the AOBs and an unsubstantiated California policy that "favors enforceability of a hospital patient's assignment of insurance benefits." Compl. ¶ 19.

As demonstrated by the caselaw surrounding patients' reasonable expectations, the established policy is that automobile insurers, like Geico, will directly pay their policyholders MP and UM benefits. On its face, there is no plausible unfair business practice claim because Geico's payments to patients are in line with well-established practices in the medical and automobile insurance industry.

Plaintiff's UCL claim under the unfair competition prong is simply a repetition of its contract claim. As discussed above, this prong of the UCL claim is both not covered by the UCL and unenforceable. See Compl. ¶ 19. Additionally, as Defendants counter, Dameron does not explain why its own interest in receiving direct payment from Geico outweighs the insureds' interests in receiving their auto-policy benefits directly from Geico and using those benefits to pay their medical bills. Reply at 7.

In sum, Plaintiff fails to allege any immoral, unethical, oppressive, unscrupulous or injurious behavior attributable to the Defendants. Because the AOBs are unenforceable and contract claims are not covered by the UCL, Plaintiff must assert that Geico's practices harm consumers to state a plausible claim for relief under the UCL. As currently alleged, Defendants' failure to comply with an unenforceable contract does not by itself create a harm to consumers or the insured individuals. In fact, these contracts are unenforceable precisely because the lack of negotiation or opportunity to examine adhesion contracts makes them restrictive and oppressive for consumers. Geico refusal to comply with an unenforceable contract is not unlawful nor unfair. Dameron's claim under the UCL is therefore dismissed.

### 3. Dameron fails to state a claim under the Medicare Secondary Payer Act

Plaintiff argues that it is entitled to payment since Defendant is the primary payer under federal law and that Medicare is the payer of last resort. See Compl. ¶ 30, 54. Defendants argue that Plaintiff's allegations are simply conclusory statements and Plaintiff has not adequately alleged that Geico General and Geico Indemnity are responsible for the medical services at issue. Mot. at 6. The parties agree that a private cause of action is available under the MSP Act only where a primary plan fails to provide for primary payment or reimbursement in accordance with the Act. Mot. at 15; Opp'n at 18. Thus, a claim under the MSP Act is plausible only if Defendants are primary plan providers.

While Plaintiff alleges in its Complaint that Defendants'

12

automobile insurance coverage is primary to patients' Medicare coverage, the federal law Plaintiff cites specifies situations in which Medicare is the secondary payer, for example, where an individual is insured by another healthcare plan. See Compl. ¶ 54; 42 U.S.C.A. § 1395y(b).  The MSP Act refers to certain primary plans, which are defined by federal statute as "a group health plan or large group health plan" 42 U.S.C.A. § 1395y(a)(2)(A)(ii). These group health plans are defined as "plan[s] (including a self-insured plan) of, or contributed to by, an employer (including a self-employed person) or employee organization to provide health care (directly or otherwise) to the employees, former employees, the employer, others associated or formerly associated with the employer in a business relationship, or their families."  26 U.S.C.A. § 5000(b)(1),(2).  By letter of the statute, the MSP Act defines primary plans as other medical insurance plans, not automobile insurance policies.

Dameron Hospital alleges that Defendants are the primary payers, but whether an automobile insurer can by law be a primary payer is not addressed in the MSP Act's statutory text.  Indeed, the statute does not reference automobile insurance at all and addresses only other healthcare insurance. See generally, 42 U.S.C.A. § 1395y(b).  Plaintiff cites an out of circuit case for the proposition that Geico has payment responsibility in this case.  See Opp'n at 8 (citing MSP Recovery Claims v. Ace American Ins. Co., 974 F.3d 1305, 1316 (11th Cir. 2020)).  However, that case is not binding on this Court and even if the Court accepts Plaintiff's allegation that Medicare and Veterans healthcare are never primary insurers, this does not automatically make another

13

presumably secondary insurance, like automobile insurance, a primary payer.  As Defendants point out, Plaintiff fails to identify the type of coverage at issue or any applicable settlement agreement or contractual obligation to establish that Geico has payment responsibility.  See Mot. at 17.

Here, Dameron Hospital's allegations are too conclusory to plausibly support primary medical payment responsibility for Defendants who are automobile insurers.  Id. While Dameron hospital "prays for leave to take discovery from Geico and then file an amended complaint," as discussed below, the Court instead grants Defendants' motion to dismiss this claim without prejudice.

### C.  Leave to Amend

A court granting a motion to dismiss a claim must decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment."  Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys.,

1 Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v.
2 Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need
3 not be granted where the amendment of the complaint . . .
4 constitutes an exercise in futility . . . .")).
5     Here, the Court finds that it is not clear that the
6 Complaint's defects cannot "be saved by [] amendment," and
7 allowing Plaintiff an opportunity to try to save its claims at this
8 stage of the litigation would not be prejudicial to Defendant since
9 the Court is allowing Plaintiff's breach of contract claim for
10 patient J.M. to move forward.

11                    III.   ORDER

12     For the reasons set forth above, the Court GRANTS Defendant
13 Geico General Insurance Company and Geico Indemnity Company's
14 Motions to Dismiss WITH LEAVE TO AMEND and DENIES Defendants motion
15 to dismiss the breach of contract claim only as it pertains to
16 self-pay patient J.M..
17     If Plaintiff elects to amend its complaint, it shall file a
18 First Amended Complaint within twenty days of this Order.
19 Defendants' responsive pleadings are due twenty days thereafter.
20 Additionally, Defendants' counsel is ordered to pay $250 to the
21 Clerk of the Court, within five days of this Order, for violation
22 of the specified page limits for Reply Briefs pursuant to the Order
23 Regarding Filing Requirements, ECF No. 11-2; 5.
24     IT IS SO ORDERED.
25 Dated: October 24, 2024

_____
JOHN A. MENDEZ
SENIOR UNITED STATES DISTRICT JUDGE

15