UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMERON HOSPITAL ASSOCIATION<br><br>Plaintiff,<br><br>v.<br><br>GEICO INDEMNITY COMPANY<br><br>Defendant.<br>_____ | No. 2:24-cv-00934-DJC-AC |
| DAMERON HOSPITAL ASSOCIATION<br><br>Plaintiff,<br><br>v.<br><br>GEICO GENERAL INSURANCE COMPANY<br><br>Defendant. | No. 2:24-cv-01379-DJC-AC<br><br>ORDER |

Before the Court are two related cases involving functionally identical claims, 2:24-cv-00934-DJC-AC and 2:24-cv-01379-DJC-AC, concerning Plaintiff Dameron Hospital and Defendants Geico General Insurance Company and Geico Indemnity

1

Company ("Geico" or "Defendant(s)").[1] Dameron alleges that Geico is responsible for additional financial costs related to Dameron's medical treatment of five patients injured in automobile accidents. Dameron's claims are that the patients assigned their payment rights under various Geico policies to Plaintiff as a condition of their medical treatment, that Defendants' failure to pay violates the Unfair Competition Law, and that that there is a live question as to payment order between three patients with Geico insurance and Medicaid. Most of these claims were previously dismissed by Judge John A. Mendez with leave to amend. (ECF No. 19;) *Dameron Hosp. Ass'n v. Geico Gen. Ins. Co.* ("*Dameron*"), No. 2:24-CV-00934-JAM-AC, 2024 WL 4581685 (E.D. Cal. Oct. 25, 2024). For the reasons discussed below, the Court finds that Plaintiff's amended pleading does not remedy some of the original complaint's fatal flaws: that the patients' assignments of rights to Dameron were done under an impermissible contract of adhesion for four of the five patients, and that there is no viable Unfair Competition Law violation as alleged.

Accordingly, the Court finds that the agreements between Dameron and four patients to assign those patients' rights are unenforceable. Also in agreement with the previous Order, the Court finds that, at this initial phase of the litigation, Plaintiff has a plausible claim that the sole uninsured patient may have validly assigned the payment rights to Plaintiff. However, the Court finds Plaintiff's UCL claims unavailing and will dismiss those claims with leave to amend. The Court further finds that Plaintiff states a claim under the federal Medicare Secondary Payer Act. Defendant's Motion to Dismiss (ECF No. 26, hereinafter "Mot.") is GRANTED in part and DENIED in part with prejudice.

## FACTS AND PROCEDURAL HISTORY

Plaintiff Dameron Hospital is non-profit health services provider in Stockton, California. (ECF No. 25, First Amended Complaint, ¶ 5.) Dameron treated patients

---

[1] Due to the nearly identical language between the complaints, the Court addresses them both in a single Order. All docket citations pertain to case No. 2:24-cv-00934-DJC-AC.

D.S., X.K., M.A., and A.G., who are Medicare Beneficiaries or have Veterans Administration healthcare, and J.M., who is a Self-Pay patient with no other applicable insurance. (*Id.* ¶ 6.) All unspecified hospital services and patient accounts implicated in this case arise from emergency room and ongoing medical care provided to injury victims by Dameron. (*Id.* ¶ 5.) As a Condition for Admission ("COA") for medical care at the hospital, Dameron required the patients to sign an Assignment of Benefits ("AOB") contract. (*Id.* ¶ 15.) The COAs signed by the patients include a clause specifically assigning all insurance benefits under Med-Pay (medical payment coverage; "MP") and Uninsured Motorist ("UM") policies to Dameron that might provide coverage for the treatment provided. (*Id.* ¶ 17; *see id*. ¶ 30.) Dameron alleges that the patients hold automobile, liability, or no-fault insurance policies provided by Geico. (*Id.* ¶¶ 2, 9.) However, Defendants apparently provided reimbursement under the insurance policies to either the patients directly or a separate third party, rather than Plaintiff, against the terms of the AOB. (*Id.* ¶ 24.)

Plaintiff alleges three causes of action.[2] First, Plaintiff demands injunctive relief under California's Unfair Competition Law, Business and Professions Code section 17200 ("UCL"), stemming from Defendants' alleged breach of contract. (*Id.* ¶¶ 53–57.) Second, Plaintiff seeks general damages from Defendants' failure to honor the patients' AOBs. (*Id.* ¶¶ 58–66.) And third, Plaintiff argues that Defendants violated the Medicare Secondary Payer Act by refusing to pay Plaintiff directly for the costs associated with the care of patients covered by Medicare. (*Id.* ¶¶ 67–75.)

## LEGAL STANDARD

### A. Federal Rule of Procedure 12(b)(1)

A party may move to dismiss a complaint for "lack of subject matter jurisdiction" under Federal Rule of Civil Procedure 12(b)(1). Challenges to a plaintiff's Article III standing are properly raised under a 12(b)(1) motion as standing is required for a

---

[2] The Court discusses these out of order below, as an analysis of the AOBs is necessary before moving to the UCL claim.

federal court to exercise jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010); *see, e.g.*, *Nat'l Fed'n of the Blind of Cal. v. Uber Techs., Inc.*, 103 F. Supp. 3d 1073, 1078 (N.D. Cal. 2015).  Taking the allegations in the complaint as true, "the court must determine whether a lack of federal jurisdiction appears from the face of the complaint itself."  *Nat'l Fed'n of the Blind*, 103 F. Supp. 3d at 1078.  The "party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction."  *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir.1996); *Chandler*, 598 F.3d at 1122.

### B.  Federal Rule of Procedure 12(b)(6)

A party may move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  While the Court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party," *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995), if the complaint's allegations do not "plausibly give rise to an entitlement to relief" the motion must be granted, *Ashcroft v. Iqbal* ("*Iqbal*"), 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible.  *Iqbal*, 556 U.S. at 678.  In the same vein, conclusory or formulaic recitations of elements do not alone suffice.  *Id*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense."  *Id*. at 679.

**DISCUSSION**

Plaintiff has plausibly alleged facts that would confer federal court standing. However, on the merits, Plaintiff is unable to show that the AOBs were valid for four of the five patients, nor does Plaintiff advance a viable UCL claim. However, Plaintiff properly invokes the federal Medicare Secondary Payer Act, and its claim under that statute may proceed.

**A. Plaintiff Has Article III Standing**

A plaintiff bears the burden of establishing an actual "case or controversy" within the meaning of Article III. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At the pleading stage, this means a plaintiff must allege facts that if proved, would confer standing upon them. *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003).

Plaintiff has met this burden. The FAC alleges that the injured patients received medical care as a "covered benefit under [defendants'] policy of insurance." (FAC ¶ 9.) While the FAC is somewhat scarce on details, Plaintiff need not allege with specificity the intricacies of the agreement between Defendants and the injured patients or how those agreements pertain to the injuries sustained by the patients. At the pleading stage, the Court is required to take Plaintiff's allegations as true. *Nat'l Fed'n of the Blind*, 103 F. Supp. 3d at 1078. Therefore, the Court must accept Plaintiff's assertion that the injuries are covered under Defendants' insurance policies, which is sufficient to establish a case or controversy under Article III. *See Warren*, 328 F.3d at 1140.

To defeat Plaintiff's claim, Defendants rely on out-of-circuit cases that dictate that the mere allegation that an insured party's injury is covered by a defendant's insurance policy is insufficient to establish standing. *See*, *e.g.*, *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 1:17-CV-1537, 2019 WL 6311987 (C.D. Ill. Nov. 25, 2019); *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, 2021 WL 1164091 (S.D.N.Y. Mar. 26, 2021); *MSP Recovery Claims, Series LLC v. Merchants Mut.*

5

*Ins. Co.*, 2022 WL 2439410 (W.D.N.Y. Mar. 28, 2022). But these cases are not binding on the Court and do not provide an adequate basis for denying Plaintiff standing at this early stage in the litigation. Defendants further argue that the "factual allegations do not support a connection between the accident and the medical service provided to the patient." (*See* Mot. at 13.) Not so. Plaintiff, albeit briefly, sufficiently connects the care it provided to the injured parties and Defendants' insurance policies. (*See* FAC ¶ 9 ("DEFENDANT insured (or insures) the patients who DAMERON treated for injuries, and for whom DAMERON'S hospital services were a covered benefit under the DEFENDANT'S policy of insurance.").)

Accordingly, the Court finds that Plaintiff has sufficiently linked its services provided to Defendants' insurance policies.

**B. The AOBs Signed by D.S., X.K., M.A., and A.G. Are Contracts of Adhesion and Are Unenforceable**

A contract of adhesion is a contract "that is offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract." *Dameron Hosp. Assn. v. AAA N. Cal., Nev. & Utah Ins. Exch.* ("*AAA*"), 77 Cal. App. 5th 971 (2022), quoting *Wheeler v. St. Joseph Hospital*, 63 Cal. App. 3d 345, 356 (1976). "The distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its term." *Wheeler*, 63 Cal. App. 3d at 356. "A hospital's standard printed 'CONDITIONS OF ADMISSION' form possesses all the characteristics of a contract of adhesion." *Id.* at 357. That is, "the would-be patient is in no position to reject the proffered agreement, to bargain with the hospital, or in lieu of agreement to find another hospital. The admission room of a hospital contains no bargaining table where, as in a private business transaction, the parties can debate the terms of their contract." *Tunkl v. Regents of Univ. of Cal.*, 60 Cal. 2d 92, 102 (1963). Contracts of adhesion may be unenforceable under California law if the weaker contracting party's

reasonable expectations of the services provided by the stronger contracting party are frustrated by the contract. See Wheeler, 63 Cal. App. 3d at 356–57.

In AAA, a case with strikingly similar facts to the one at hand, the California Court of Appeal considered the same COA before this Court and held that it was a contract of adhesion. 77 Cal. App. 5th at 992–93. In the previous Order dismissing this case in part, Judge Mendez noted that "AAA squarely holds that Dameron Hospital's COAs are adhesion contracts and are unenforceable if patients do not reasonably expect such assignment of benefits to occur." Dameron, 2024 WL 4581685, at *2. This Court agrees: "Dameron's COAs possess all the characteristics of a contract of adhesion because [t]he would-be patient is in no position to reject the proffered agreement, to bargain with the hospital, or in lieu of agreement to find another hospital." Id., internal quotations omitted.

Finding that Plaintiff's COAs are contracts of adhesion, the Court then turns to whether these contracts impermissibly frustrate the patients' reasonable expectations of Dameron's services. See Wheeler, 63 Cal. App. 3d at 356–57. The Court again agrees with the previous Order and AAA's conclusion that "any policy holder with medical insurance would not reasonably expect to assign their MP and/or UM Benefits because persons with these benefits 'expect benefits to be paid directly to them to compensate them for their bodily injuries.'" See Dameron, 2024 WL 4581685, at *3, quoting AAA, 77 Cal. App. 5th at 993-94; see also Dameron Hosp. Ass'n v. Progressive Cas. Ins. Co., --- Cal. Rptr. 3d ---, No. C099467, 2025 WL 1502017 (Cal. Ct. App. May 27, 2025) (reaffirming that conclusion). That is to say, when a person obtains an insurance policy that reimburses for harm suffered, it is reasonable for them to assume that reimbursement will go to them, rather than to a different party.

Plaintiff has not meaningfully responded to the concerns raised by Judge Mendez in dismissing the initial complaint. Plaintiff's sole response seems to be the brief addition of the argument that, even if the AOBs are contracts of adhesion, an insured would not have their reasonable expectation frustrated by the COA's

assignment of payment to Plaintiff. (*See* FAC ¶¶ 21, 22.) But this argument was already expressly rejected by Judge Mendez, *Dameron*, 2024 WL 4581685, at *3, and in any event is flatly inconsistent with the reasoning of the California Courts of Appeal that have considered this same AOB. Plaintiff has alleged no new facts that would otherwise recast the COA as being a permissible contract of adhesion. Instead, Plaintiff merely expresses its disagreement with the Order's conclusion. Plaintiff does not get a second chance at its failing argument simply because the case has been reassigned to a new judge – it must allege new facts to undergird its arguments if it hopes to be successful on a previously dismissed complaint.

Because these four contracts are unenforceable, Plaintiff's related breach of contract claims fail.

### C. Plaintiff's Claim Regarding J.M. May Be Viable

Patient J.M., as an otherwise uninsured patient, is dissimilar to the other four patients who had medical insurance besides their Geico policies. (*See* FAC ¶ 20.) *AAA* contemplated that a patient with an insurance cap on a specific policy could reasonably believe that any additional costs would need to come from an alternate funding source or insurance policy. 77 Cal. App. 5th at 995. For the reasons discussed below, J.M. may be similar to the patient considered in *AAA*, and this claim may be viable, at least at the early stages of this litigation.

MP benefits are intended to cover costs associated with medical treatment, rather than damages for bodily injuries suffered. *See AAA*, 77 Cal. App. 5th at 994. Dameron seeks to collect on its costs from J.M's MP benefits: it does not seek to recoup any costs from J.M.'s UM benefits. (*See* FAC ¶ 20;) *see also Dameron*, 2024 WL 4581685, at *3. Because J.M. does not otherwise have an insurance policy – medical or otherwise – that would cover their medical expenses, and because Dameron fairly points out that it is solely seeking payment under J.M.'s MP benefits which are designed to reimburse medical payments, it is plausible that when signing the AOB, J.M. reasonably expected to assign any insurance coverage payments

related to medical expenses to Dameron. *See Dameron*, 2024 WL 4581685, at * 3; *AAA*, 77 Cal. App. 5th at 994 ("[I]t is possible a trier of fact might conclude it was within [a patient's] reasonable expectations that Dameron would seek to collect direct payments . . . out of [a patient's] MP benefits."). However, the Court acknowledges *AAA*'s observation that "the fact that the MP coverage is imbedded in an automobile insurance policy suggests that perhaps, a patient would not expect a hospital to collect payments from MP benefits directly from his MP provider," and that "there remains a factual question as to whether . . . it was within the reasonable expectations" of the patient for them to assign their MP rights. *Id.*

On this point, Geico argues that under California law, it needs to have consented to any assignment of benefits under its policies for that assignment to be valid. (*See* Mot. at 19–21.) In agreement with Judge Mendez's prior Order, the Court finds that Geico need not have consented to the assignment of its policy to Dameron. Defendants cite no relevant case law that shows J.M. needed Geico's assent to effectuate the AOB. Defendants rely on *Buckeye Refin. Co. v. Kelly*, 163 Cal. 8 (1912) and *Stein v. Cobb*, 38 Cal. App. 2d 8 (1940), but these cases discuss consent in distinguishable contexts. *Buckeye Refining Co.* discusses partial assignments of benefits for property bonds, and regardless recognizes that there are instances where "partial assignment . . . [is] not entirely ineffectual, even though it be without the assent of the debtor." 163 Cal. at 13. And *Stein*, a case already distinguished by Judge Mendez, focuses on assignment of publishing rights, rather than medical insurance policies. 38 Cal. App. 2d at 10. The Court adopts Judge Mendez's prior conclusion that, at this juncture, Geico has not established as a matter of law that it must consent to the assignment of its policies. *See Dameron*, 2024 WL 4581685, at *4.

Accordingly, Plaintiff's claim regarding J.M.'s treatment is distinct from the other patients and may be viable.

////

### D. Plaintiff Fails to State a Claim Under the UCL For All Patients

The UCL protects California's consumers by prohibiting any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. As relevant here, when assessing UCL claims, the Court considered whether a defendant's actions are unlawful or unfair.

#### 1. Unlawful Prong

Under the unlawful prong of the UCL, a plaintiff must allege more than a common law violation of breach of contract. *Shroyer v. New Cingular Wireless Servs. Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010.)

For all five patients, Plaintiff does not allege more than a common law violation of breach of contract. (*See* FAC ¶ 31.) Plaintiff's claims again rely on the rejected argument that the AOBs are valid assignments, rather than unenforceable contracts of adhesion. (*See* ECF No. 28, hereinafter "O'ppn," at 21–22.) But as already discussed, Plaintiff's argument here is unavailing. And while J.M.'s AOB *may* be valid due to their reasonable expectation that they could assign Geico's insurance coverage payments to Plaintiff, Plaintiff's allegations do not rise above a common law violation of breach of contract. Common law violations for breach of contract do not offend the UCL, and therefore, Plaintiff's claims under this prong are not viable. *See Shroyer*, 622 F.3d at 1044. While Plaintiff later alleges there are unlawful violations of the Medicare Secondary Payer Act that would invoke the UCL, those allegations come in Plaintiff's Opposition, rather than Complaint, and are therefore not properly presented. (*See* Opp'n at 22;) *see also McMichael v. Napa Cnty.*, 709 F.2d 1268, 1273 n.4 (9th Cir.1983) (a court need not consider claims that were not raised in the complaint).

#### 2. Unfair Prong

While there is no exact definition of unfairness under the UCL, California courts have generally proscribed "unfair" or "deceptive" acts, even if those acts are not "unlawful." *See Cal-Tech. Comm., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

In its FAC, Plaintiff merely realleges the same arguments previously rejected by this Court as to its UCL claims. Specifically, Plaintiff argues that Dameron's assignments do not exceed the reasonable expectations of the patients because the patients intended that their benefits provided to Geico would cover their medical expenses related to their accidents. (*See* FAC ¶ 14; *see also* Opp'n at 21.) As previously discussed by Judge Mendez, and as discussed earlier in this Order, the Court finds that the AOBs signed by four of the five patients are unenforceable contracts of adhesion, and therefore, no breach of contract occurred from those agreements. *See Dameron*, 2024, WL 4581685 at *4–5. And while J.M.'s agreement has not been deemed an unenforceable contract of adhesion and therefore *may* be valid, Plaintiff does not identify any unfair or deceptive acts that would invoke the UCL. For example, Plaintiff relies on the already-rejected claim that Defendants' actions offend a "long-standing public policy" which favors hospital patients' assignments of benefits. (FAC ¶ 32.) Plaintiff provides no citation for this assertion. Instead, it merely references the hospital's "unfunded mandate to treat all accident victims." (*Id*. ¶ 33, emphasis removed.) But nothing is preventing Plaintiff from being paid; here, for four of the five patients, Plaintiff is instead seeking to reap *higher* payments than what it would normally charge the patients on their own. Plaintiff's gambit to receive higher payments for the same care provided does not properly invoke any public policy goals.

### E. Defendant States a Claim Under the Medicare Secondary Payer Act

Under the Medicare Secondary Payer Act ("Act"), primary insurance plans – including automobile, liability, or no-fault insurance policy plans – must be paid out before Medicare insurance payments. 42 U.S.C. § 1395Y(b)(2)(A)(ii). Further, Medicare insurance payments are restricted when "payment has been made or can reasonable expected to be made . . . under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance)." *Id*. Under the Act, a Plaintiff must plead: (1) the defendant's status as a primary plan; (2) the defendant's

11

failure to provide for primary payment or appropriate reimbursement; and (3) the damages amount. *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F. 4th 1295, 1302 (11th Cir. 2022).

Here, the Court departs slightly with Judge Mendez's prior Order, which found that Plaintiffs failed to state a claim under the Act because they could not allege that Defendants' insurance policies were contemplated as primary payers under the Act. *See Dameron*, 2024 WL 4581685, at *5. Plaintiff alleges that patients M.A., A.G., and X.K. are Medicare beneficiaries and therefore their Geico automobile insurance would need to provide payment as it is the primary payment plan. (FAC ¶¶ 67–75.) As noted in the preceding paragraph, the Act specifically identifies the kinds of policies offered by Geico (i.e., automobile, liability, or no-fault insurance policy plans) as being primary payment sources before Medicare. *See* 42 U.S.C. § 1395Y(b)(2)(A)(ii). Plaintiff has also pled that Defendants have not paid Plaintiff for the medical services and the specific damages amount. (FAC ¶ 6.) Plaintiff satisfies its pleading requirements under the Act. *See MSP Recovery Claims, Series LLC*, 40 F. 4th at 1302.

Relying again on out-of-circuit case law, Defendants argue that Plaintiffs have not sufficiently alleged that Defendants' policies should be considered as primary payment sources. But the text of the statute is clear: these kinds of policies are explicitly acknowledged as primary payment sources, and Plaintiff has sufficiently identified those policies in its FAC. Defendants can point to no controlling case law that would otherwise bar Plaintiffs' claim.

Plaintiff therefore has a viable claim under the Act. Patients M.A., A.G., and X.K. are covered both by Medicare and Defendants' insurance policies, which Plaintiff alleges cover the medical care provided. (*See* FAC ¶ 9.) And, Plaintiff alleges that it has not been paid out the amount it claims that it is owed under those policies. Accordingly, Plaintiff may invoke the Act's private cause of action.

////

////

### F. Leave to Amend is Granted in Part

A court granting a motion to dismiss a claim must decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the *Foman* factors as those to be considered when deciding whether to grant leave to amend). But, dismissal without leave to amend may be proper if it is clear that the complaint could not be saved by any amendment. *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007); *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .").

Here, Plaintiff seeks leave to amend to file a second amended complaint to cure any deficiencies in its pleadings. (Opp'n. at 24.) The Court will grant Plaintiff's request for leave to amend solely as to the UCL claims. At present, Plaintiff only pleads common law contract violations pertaining to the AOBs, which do not qualify as UCL violations. While the Court has determined that claims pertaining to the AOBs are nonviable, the Court recognizes that there is a viable Medicare Secondary Payer Act claim, and thus, the Court will give Plaintiff the option of realleging its UCL claims in light of that conclusion.

However, the Court will deny leave to amend for Plaintiff's AOB claims pertaining to D.S., X.K., M.A., and A.G. Those claims have now been unsuccessfully litigated twice, and the Court deems them unsalvageable by amendment. *See Intri-Plex Techs, Inc.*, 499 F.3d at 1056.

////

////

////

13

**CONCLUSION**

Defendants' Motions to Dismiss in cases 2:24-cv-00934-DJC-AC and 2:24-cv-01379-DJC-AC (ECF No. 26 for both cases) are GRANTED with prejudice as to Plaintiff's claims regarding D.S., X.K., M.A., and A.G.'s Assignment of Benefits. Additionally, the Motions are GRANTED without prejudice as to Plaintiffs' claims under the UCL. Defendants' Motions to Dismiss are DENIED as to J.M.'s Assignment of Benefits and Plaintiff's Medicare Secondary Payer Act claim pertaining to patients M.A., A.G., and X.K. Plaintiff may refile a Second Amended Complaint within 21 days realleging claims under the UCL if it so chooses.

IT IS SO ORDERED.

Dated:  **June 23, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC5 – Dameron24cv00934, 01379.MTD

14